JACQUELINE DESOUZA, State Bar No.: 133686
DESOUZA LAW OFFICES, a professional corporation
2397 Shattuck Avenue, Suite 202
Berkeley, CA 94704
Telephone: (510) 649-3420
Facsimile:  (510) 649-1711
jdesouza@dlawcorp.com

Attorneys for Defendants:
Martin Lettunich, Stefan Matan

## IN THE UNITED STATES DISTRICT COURT

## NORTHEN DISTRICT OF CALIFORNIA

XS Holding B.V., derivatively on behalf of Xslent Technologies, LLC and XET Holding Co., LLC, and separately on its own behalf

                                    Plaintiff,

        v.

COOL EARTH SOLAR, INC., a Delaware corporation; ROB LAMKIN, an individual; LAWRENCE ASUNCION, an individual; SOLAR COMPONENTS LLC, a Delaware limited liability company; NATHAN SCHULHOF, an individual; M. JAMES BULLEN, an individual: MARTIN N. LETTUNICH, an individual; STEFAN MATAN, an individual; and XSLENT, LLC, a Nevada limited liability company and ATIRA TECHNOLOGIES, LLC, a Nevada limited liability company;

                                    Defendants.
_____/

**Case No. C08 02282 (RMW)**

**NOTICE OF MOTION AND MOTION TO DISMISS THIS ACTION FOR LACK OF DIVERSITY JURISDICTION AND FAILURE TO NAME INDISPENSABLE PARTIES [Fed.R.Civ.P. rule 12(b)(1),(7).]**

Date: July 25, 2008
Time: 9:00 a.m.
The Hon. Ronald M. Whyte

NOTICE IS HEREBY GIVEN:

On July 25, 2008, at 9:00 a.m. before the Hon. Ronald M. Whyte, Defendants Martin Lettunich and Stefan Matan will move this Court for an Order dismissing this action pursuant to Federal Rules of Civil Procedure, rule 12(b)(1) for lack of jurisdiction and pursuant to Federal Rules of Civil Procedure, rule 12(b)(7) and rule 19 for failing to name indispensable parties.

        This motion is based upon this notice of motion, the accompanying memorandum of points and authorities, declaration of Jacqueline deSouza, declaration of Martin Lettunich, and request for judicial notice, filed concurrently; upon such additional documents as may be filed on

1    this motion and in this action; and upon such oral evidence and argument as may be introduced at

2    the hearing on this motion.

3

4    Dated: May 22, 2008                                    DESOUZA LAW OFFICES, PC

5

6                                                          By:_____

                                                          Jacqueline deSouza

7                                                          Attorneys for Defendants Martin Lettunich
                                                          and Stefan Matan

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1  JACQUELINE DESOUZA, State Bar No.: 133686
   DESOUZA LAW OFFICES, a professional corporation
2  2397 Shattuck Avenue, Suite 202
   Berkeley, CA 94704
3  Telephone: (510) 649-3420
   Facsimile:  (510) 649-1711
4  jdesouza@dlawcorp.com

5  Attorneys for Defendants:
   Martin Lettunich, Stefan Matan
6

7            IN THE UNITED STATES DISTRICT COURT

8            NORTHEN DISTRICT OF CALIFORNIA

9  XS Holding B.V., derivatively on behalf of Xslent      **Case No. C08 02282 (RMW)**
   Technologies, LLC and XET Holding Co., LLC,
10 and separately on its own behalf

11                                                         **MEMORANDUM OF POINTS AND**
                                                           **AUTHORITIES IN SUPPORT OF**
                        Plaintiff,                         **DEFENDANT MARTIN**
12                                                         **LETTUNICH's & STEFAN**
           v.                                              **MATAN's MOTION TO DISMISS**
13                                                         **THIS ACTION FOR LACK OF**
   COOL EARTH SOLAR, INC., a Delaware                      **DIVERSITY JURISDICTION AND**
14 corporation; ROB LAMKIN, an individual;                 **FAILURE TO NAME**
   LAWRENCE ASUNCION, an individual;                       **INDISPENSABLE PARTIES**
15 SOLAR COMPONENTS LLC, a Delaware                        **[Fed.R.Civ.P. rule 12(b)(1),(7).]**
   limited liability company; NATHAN
16 SCHULHOF, an individual; M. JAMES
   BULLEN, an individual: MARTIN N.
17 LETTUNICH, an individual; STEFAN MATAN,                 Date: July 25, 2008
   an individual; and XSLENT, LLC, a Nevada               Time: 9:00 a.m.
18 limited liability company and ATIRA                     The Hon. Ronald M. Whyte
   TECHNOLOGIES, LLC, a Nevada limited
19 liability company;

20                      Defendants.
                                          /
21

22

23

24

25

26

27

28

1

## I. INTRODUCTION

2      Plaintiff, XS Holding B.V. ("XS/Caffyn") is forum shopping.  Not content with the rulings

3 of Judges Elving, McKenny, and Walsh in Santa Clara County Superior Court, XS/Caffyn seeks

4 to re-litigate certain disputes in this Court.  XS/Caffyn's tactic is flawed because it sues only upon

5 state law claims but lacks complete diversity.   Defendants Martin Lettunich ("Lettunich") and

6 Stefan Matan ("Matan") request that this Court dismiss this Action in its entirety for lack of

7 jurisdiction (Fed.R.Civ. P. 12(b)(1).), and for failing to name an indispensable party (Fed.R.Civ.P.

8 12(b)(7).).[1]

9      In addition, Defendants request this Court to assess sanctions consisting of attorneys' fees

10 and costs incurred responding to the filing of the Complaint and First Amended Complaint as it is

11 truly a frivolous filing, prohibited by Federal Rules of Civil Procedure, rule 11.  Defendants have

12 filed a separate motion for such relief in accord with Local Rule 7-8.

13

## II.  RELEVANT BACKGROUND

14      Xslent Technologies LLC ("XT") is a limited liability company that is owned 90% by its

15 Class A members, Atira Technologies LLC ("Atira") and Xslent, LLC "Xslent"); and 10% by its

16 Class B member XS.   (FAC ¶9, 18-19,31 Exh.2 pp.44-45.)  According to the First Amended

17 Complaint ("FAC"), XET is also a limited liability company, owned 90% by its Class A member,

18 XT; and 10% by its Class B member XS.  (FAC ¶¶9, 18,19, 30, Exhibit 1, p.51.)    XS is a Dutch

19 corporation owned by Brian Caffyn.  (FAC at ¶9; Declaration Martin Lettunich ¶2.)   The

20 citizenship of the Class A members of XT, Atira and Xslent, is not set forth in the Complaint or

21 FAC.   But as averred by Lettunich the membership of both limited liability companies is

22 predominantly Californian.  (Lettunich ¶2; at a minimum, Lettunich avers that he at least is a

23 member of both companies and that he is a resident of California.)

24      This Action arises from an attempt by a member, XS/Caffyn, to seize control of valuable

25 alternative energy technology.   XS/Caffyn agreed to fund the development of Atira's alternative

26 _____

27      [1]Alternatively, Lettunich requests that this Court stay this Action pending the conclusion
of the litigation before the Santa Clara County Superior Court; or, abstain from exercising
28 jurisdiction.

1  energy technology through XET.   (FAC ¶ 30, Exh.1 section 3.1.2 p.7; Lettunich ¶3. )   When

2  XS/Caffyn could not secure one-sided licenses to use Atira's alternative energy technology for its

3  own solely-owned companies, it refused to continue to fund.  (Lettunich ¶3.)  In response to

4  XS/Caffyn's failure to fund, XT and XET revoked certain minority rights including XS/Caffyn's

5  right to cast two votes at XT or XET manager meetings.  (FAC ¶¶45-46; Lettunich ¶4.) XS/Caffyn

6  objected to the action by disrupting the operations of the companies.  (Lettunich ¶4.)

7  This dispute eventually erupted in a suit for declaratory relief filed by XT, XET, and others, in

8  Santa Clara Superior Court.  (RFJN Exhibit A.)   XS/Caffyn, represented by Sedgwick, Detert,

9  Moran & Arnold LP and Paul Riehle, filed a cross-complaint for breach of contract, bad faith,

10 breach of fiduciary duties, misrepresentation and declaratory relief.  In the cross-complaint,

11 XS/Caffyn sought general and special damages including disgorgement, and declaratory relief

12 that, *inter alia*, Lettunich's and Matan's actions were *ultra vires*.  (RFJN Exhibit B.)  This cross-

13 complaint was amended on May 1st of this year to plead largely the same assertions as are asserted

14 in this federal action against Lettunich and Matan.  (RFJN Exhibit C.)

15       On August 21, 2007, the Hon. William J. Elving issued a temporary restraining order on

16 XT's and XET's behalf.  (RFJN, Exhibit D.)   On September 21, 2007, the Hon. Kevin

17 McKenny denied XS/Caffyn's application for a restraining order.   (RFJN Exhibit E.)   Both

18 parties sought preliminary injunctions and, on October 29, 2007, after three days of testimony and

19 argument, the Hon. Brian C. Walsh granted XT's and XET's application and denied XS/Caffyn's

20 application.  (RFJN Exhibit F.)  Judge Walsh's Order prevented Caffyn from identifying himself

21 as the CEO of XET, from casting two votes at any XT or XET manager meetings, or from

22 attempting to terminate any contracts entered into by XT or XET with third parties.   The Order

23 preserved the status quo of leaving management of XT and XET with Lettunich and Matan.

24 (Lettunich ¶4.)   Since October of 2007,  XS/Caffyn sought reconsideration or modification of

25 Judge Walsh's Preliminary Injunction on at least three occasions.  (See, e.g.RFJN, Exhibit G. [2])

26 ─────────────────

27       [2]On May 20th, after eight months of litigation, XS/Caffyn filed a California Code of Civil
   Procedure, section 170.6 notice of disqualification (peremptory challenge).  Defendants opposed
28 that notice and the Court has set a hearing for June 3rd.  (Declaration deSouza ¶4.)

1  Judge Walsh has set trial for October 6, 2008.   (RFJN, Exhibit H.)

2        Despite the distraction of this contentious litigation, Lettunich and Matan have secured

3  two separate and very lucrative business deals for XET: the Solar Components LLC transaction

4  for a license to use the XET technology with regard to some but not all commercial products with

5  a potential revenue to XET of $25 million; and the Cool Earth Inc transaction for a license to use

6  and/or option to purchase some of the XET technology for use with Cool Earth's products with a

7  potential revenue to XET in excess of $100 million.   (Lettunich ¶5; FAC ¶¶60-89.)   On April

8  8th, and 10th, XS/Caffyn sought a temporary restraining order preventing Lettunich and Matan

9  from entering into either of these transactions.   (RFJN Exhibit I and J.)   After submitting motion

10 papers and arguing both applications, Mr. Riehle withdrew the request for a restraining order as to

11 the Solar Components transaction.   (Declaration Jacqueline deSouza, ¶2-3 Exhibit A.)   The

12 Court denied his application for restraining order as to the Cool Earth transaction (RFJN Exhibit

13 K.), and set the matter for hearing on April 30th (at the same time as the pending preliminary

14 injunction to modify the October 29th injunction).   At the hearing on April 30th, Mr. Riehle

15 advised that the Court's denial of the restraining order had "mooted" his application for

16 preliminary injunction and he did not proceed on it.   (Declaration deSouza ¶3 Exhibit B.)

17       On May 1st, XS/Caffyn filed this action, naming XT and XET as defendants.   On May 2nd,

18 Xslent, LLC filed a notice of possible defect in jurisdiction.   (RFJN Exhibit L.)   In response,

19 XS/Caffyn *dismissed* XT and XET as defendants and filed a First Amended Complaint ("FAC")

20 that states XS/Caffyn sues defendants derivatively on behalf of XT and XET as well as on its own

21 behalf.   (RFJN, Exhibit M)   Xslent filed a second notice of possible defect in jurisdiction and

22 notice of related cases, pursuant to Northern District Local Rule, 3-13.   (RFJN, Exhibit N.)

23                    **III.  LEGAL ARGUMENT**

24       ***XS/Caffyn's Complaint Should Be Dismissed As The Plaintiff Lacks Complete Diversity
         And Failed To Name Indispensable Parties***

25       An Order granting a motion to dismiss pursuant to Federal Rules of Civil Procedure, rule

26 12 (b)(1) is appropriate where, as here, the only basis for jurisdiction is diversity and complete

27 diversity does not exist.   (*Thornhill Pub'n Co v. General Tel. & Elecs. Corp.*, 594 F.2d 730,733

28

1  (9th Cir.1979).)   Complete diversity means that no plaintiff may have the same citizenship as any

2  defendant.  (*Strawbridge v. Curtiss*, 7 U.S. 267 (1806).)   Where a challenge to a claim of

3  complete diversity cannot be determined from the face of the pleading, a party may introduce

4  affidavits to establish citizenship and no deference should be given to the non-moving party's

5  allegations. (*Thornhill, supra*, 594 F.2d at 733; see also *Summer Peck Ranch Inc v. Bureau of*

6  *Reclamation*, 823 F.Supp.715, 719 (9th Cir. 1993) as to allegations disproved by evidence

7  submitted by way of requests for judicial notice.)

8        Lettunich asserts that this action should be dismissed pursuant to Federal Rules of Civil

9  Procedure, rules 12 (b)(1) and (7).   XS/Caffyn's claims are all derivative of XT's and XET's

10  rights; as such, XT and XET are indispensable parties to this action.   But no matter how the

11  parties are aligned, complete diversity does not exist.   XT and XET are both Dutch and

12  Californian citizens; XS is a Dutch corporation; and all of the named defendants are Californian

13  citizens.   XT and XET, as indispensable, unwilling, and antagonistic parties, should be aligned

14  with the defendants.   Such alignment, however, defeats diversity as the action would be between

15  an alien, XS, a Dutch corporation, against alien defendants, XT and XET.   In the unlikely

16  situation that XT and XET are named as indispensable parties but aligned as plaintiffs for

17  purposes of diversity, jurisdiction still does not exist because XT and XET lack diversity from the

18  named defendants who and which include California citizens.   These defects are fatal and this

19  action should be dismissed with prejudice for lack of jurisdiction and failure to name an

20  indispensable party.

21        ***A.    Complete Diversity Does Not Exist.***

22        XT and XET are indispensable parties and must be named in this action.   A company is an

23  indispensable party where the company's beneficial interest in the asset, technology, or operation

24  is the subject of the litigation and will be impacted by a court's decision.  (*Pit River Home &*

25  *Agric. Coop. Ass'n v. United States*, 30 F.3d 1088, 1099 (9th Cir. 1994); *EEOC v. Peabody*

26  *Western Coal Co.*, 400 F.3d 774, 781 (9th Cir. 2005.), an indispensable party is one against which

27  relief is not sought but is so situated as to impair the effectiveness of relief that may be awarded.)

28  Consistent with these principles, the Supreme Court has held that a company is an indispensable

party to a shareholder derivative action.   (*Ross v. Bernhard, supra,* 396 U.S. at 538; *Smith v. Sperling, supra,* 354 U.S. at 93; *see also Lewis et al v. Lewis et al,* 358 F.2d 495, 500-501 (9th Cir. 1966) companies are necessary parties where relief such as accounting, constructive trust will impact them or where the companies are parties to agreements that are being adjudicated; Fed.R.Civ.P.19(a).)  As indispensable parties, XT and XET must be joined.  But complete diversity cannot exist if XT and XET are parties.

For purposes of diversity, a limited liability company, such as XT or XET, is  considered a citizen of all of the places where its members are citizens.  (*Johnson v. Columbia Properties*, 437 F.3d 894, 899 (9th Cir. 2006).)   XT is a citizen of California and the Netherlands by virtue of its members'(Atira's, Xslent's, and XS') citizenship.   (FAC ¶ 9,18-19; Lettunich ¶2.)   Atira and Xslent are limited liability companies whose members are, in part, Californian citizens. (Declaration Martin Lettunich ¶2;see also FAC ¶18-19.)   Moreover, XET is, in part, a Californian and Dutch citizen by virtue of its members', XT and XS, citizenship.  (FAC ¶9, 18-19; Lettunich ¶2.)  Given these facts, complete diversity does not exist, whether XT and XET are aligned as defendants (as Defendants assert here) or plaintiffs.

XT and XET should be aligned as defendants.   In derivative actions, a plaintiff sues to enforce the companies' rights.  (See, section II.A.3, *infra*, pp.9-11.)   While the companies are the real parties in interest, they are aligned as defendants.  (*Smith v. Sperling,* 354 U.S. 91, 96-97 (1957).)   The reason for this is that the company is an indispensable party and must be joined in the suit (*Ross v. Bernhard,* 396 U.S. 531, 538 (1970).), but is antagonistic towards the disgruntled member.   In *Sperling*, the Supreme Court held that "there is antagonism [between a disgruntled shareholder and the company] whenever the management is aligned against the [shareholder] and defends a course of conduct which he attacks."   The determination whether a company is antagonistic depends on the face of the complaint.  (*Sperling, supra*, 354 U.S. at 94.)   XS/Caffyn alleges that the management of XT and XET (Lettunich and Matan) has acted without authority to convert money, technology, to withhold records, to enter into transactions with third parties to the detriment of XT and XET.  (FAC ¶¶30-89.)   XS/Caffyn contends that "Lettunich and Matan have failed to cause XET and XT to pursue the claims [asserted in the FAC] since they, in large

1  part, are the perpetrators of the wrongdoing." (FAC ¶108, see also ¶¶90-95, 103-108.) Indeed,

2  in each of the causes of action, XS/Caffyn describes conduct that pits management (Lettunich and

3  Matan) against XS. Based on the body of the FAC, XT and XET are antagonistic and should be

4  considered defendants for purposes of determining if diversity jurisdiction exists.

5      As defendants, XT and XET share the same citizenship (Dutch) as the plaintiff, XS, and

6  complete diversity does not exist. (*Grupo Dataflux v. Atlas Global Group L.P.*, 541 U.S. 567

7  569 (2004), requisite diversity did not exist where alien companies sue on both sides of an action.)

8   The presence of citizen defendants does not preserve jurisdiction as to the alien defendants.

9  (*Faysound Ltd. v. United Coconut Chemical Inc.*, 878 F.2d 290, 294 (9th Cir. 1989).) And, where

10 the alien defendants are indispensable, as XT and XET are here, the action must be dismissed.

11 (*Id.*, at 294.)

12     Even if, for some reason, XT and XET are aligned as plaintiffs in this action, this case

13 should be dismissed for lack of diversity. XT and XET, as California citizens, lack complete

14 diversity from every other defendant. The FAC lists Lettunich, Matan, Lamkin, Asuncion,

15 Bullen, and Shulhof as residents of California. (FAC ¶¶11, 12, 14, 15, 16, 17.) Thus, complete

16 diversity does not exist as to the named defendants. (*Newman-Green, Inc v. Alfonzo-Larrain,*

17 490 U.S. 826, 829 (1989), when a plaintiff sues more than one defendant in a diversity action, the

18 plaintiff must beat the requirements of the diversity statute for each defendant or face dismissal.")

19  Complete diversity does not exist for XS/Caffyn's action and this case should be dismissed for

20 lack of jurisdiction.

21     ***B.    This Action Should Be Dismissed For Failing To Name Indispensable Parties***

22     XT and XET were dismissed by XS/Caffyn to create jurisdiction. But they are

23 indispensable and must be joined as parties. (See, IIA.1 pp.4-5, *supra*.) The failure or inability

24 to join XT and XET as a party warrants dismissal of this action pursuant to Federal Rules of Civil

25 Procedure, rule 12(b)(7), 19(b).

26     To determine if an action should be dismissed because of the failure to join an

27 indispensable party, the court must first determine that the party is indispensable and then is

28 required to balance the four factors set forth in rule 19(b) and determine if the interests of equity

1   and good conscience warrant dismissing a case.[3]   No one factor controls the court's determination

2   which is "'"heavily influenced by the facts and circumstances of each case."'" (*Pit River, supra*, 30

3   F.3d at 1098 [citations].)   The rule 19(b) factors, when considered against the facts of this case,

4   weigh in favor of dismissing this action.

5         Initially, complete relief cannot be awarded on XS/Caffyn's claims in the absence of XT

6   and XET.   XS, is at best, the nominal plaintiff to this action, while XT and XET are the real

7   parties in interest who will be bound by the result of the suit.  (*Ross v. Bernhard*, *supra*, 396 U.S.

8   at 538-539.)   XT and XET cannot be bound by a judgment, however, if they are not joined as

9   parties.  Or, the alternative, no relief may be awarded on XS/Caffyn's FAC if XT and XET are not

10   joined as parties.

11         In *Lewis et al v. Lewis et al,* supra, 358 F.2d at 500-501, the Court held that where

12   individual parties sought adjudication of their rights under contracts entered into by the individual

13   parties and their closely-held corporations, the corporations were indispensable parties. "Each

14   [corporation] has an interest in the controversy that is not distinct and severable from that of the

15   personal defendants.  The court could not render justice between the personal parties, in the

16   absence of the corporate defendants, for in their absence the court would be without power to

17   order the corporations to account, nor could it impose a constructive trust upon any of their

18   properties.. . .[and any judgment] would not protect the rights of corporate creditors."  Similarly

19   here, XS/Caffyn's suit seeks adjudication of XT's and XET's rights; a determination that XT and

20   XET were harmed by Lettunich's and Matan's conduct; an accounting; a determination that Solar

21   Components' and Cool Earth's agreements with XT and XET are *ultra vires;* and, a determination

22   that all technology and funds transferred to third parties be returned and placed in trust for XET.

23   As in *Lewis*, such relief cannot be awarded without XT's and XET's participation.   There is no

24

25         [3]These factors are: (1)the extent to which a judgment rendered in the person's absence

26   might prejudice that person or the existing parties;(2) the extent to which any prejudice could be
lessened or avoided by: (A) protective provisions in the judgment;(B) shaping the relief; or C)

27   other measures; (3) whether a judgment rendered in the person's absence would be adequate; and

28   (4) whether the plaintiff would have an adequate remedy if the action were dismissed for
nonjoinder.  (Fed.R.Civ.P.19(b).)

reason or equity to require Defendants to litigate an action in which relief cannot be awarded.

Furthermore, no partial judgment may be issued to avoid the inability to render a complete judgment as to XT's or XET's rights or their assets, or avoid prejudice to Defendants.    It is impossible to carve out relief on XS/Caffyn's claims when such relief is derived from XT's and XET's rights and inures to XT's and XET's benefit.    (*Virginia Surety Co* v. *Northrop Grumman Corp*, 144 F.3d 1243, 1248-1249 (9th Cir. 1998) dismissal was warranted where the only means to protect the interest of an absent indispensable party would be to limit the application of the judgment, effectively stripping the judgment of any meaning.)    Attempting to carve a partial judgment as to the claims stated here, would mean that no party would have a final and complete judgment.

But, most importantly, as there is a pending state court action in which the same allegations are being litigated, there is no need to jump through hoops to allow this action to proceed despite the lack of jurisdiction.    (*Virginia Surety Co*, *supra*, 144 F.3d at 1248-1249.) XS/Caffyn's rights are fully protected and can be fully litigated in the action presently pending in the Santa Clara Superior Court.    The facts here are similar to those before the Court in *Faysound Ltd., v. United Coconut Chemicals Inc*, *supra*, 878 F.2d at 294.    There, while a state claim was pending in state court in California, a plaintiff filed suit in federal court in California dropping a necessary party in order to create diversity jurisdiction.    The district court held the inability to join a necessary party was a fatal defect and dismissed the action.    The court of appeal upheld the district court's decision noting that the parties had an adequate forum in state court.    The court held that there was no reason to expand jurisdiction to allow a plaintiff to pursue a claim based on diversity of citizenship where none existed. (See, *Rockwell Int'l Credit Corp v. United States Aircraft Ins. Group*, 823 F.2d 302, 304 (9th Cir. 1987); *Virginia Surety Co*, *supra*, 144 F.3d 1248-1249.)    Similarly, here, there is an able and available forum to address XS/Caffyn's claims; there is no need to create jurisdiction in a second forum where jurisdiction does not presently exist.

Balancing the rule 19(b) factors within the framework of the facts of this case leads to the conclusion that this action should be dismissed.  XT and XET are indispensable parties; without XT and XET as parties, relief on XS/Caffyn's claims cannot be provided and there is no means to

1    fashion a judgment that avoids prejudice to XT or XET as absent parties.   On the other hand,

2    XS/Caffyn has an alternate and able forum to address its claims.   Indeed it has been litigating

3    these same claims before the Santa Clara State Court for over 8 months and is scheduled to

4    proceed to trial in 4 months.   Balancing the prejudice to XT and XET, not to mention the

5    existing Defendants, if suit is permitted to proceed against the lack of prejudice if suit is dismissed

6    leads to the single conclusion that equity and good conscience mandate this action be dismissed.

7       **C.  *XS/Caffyn's Claims Are Derivative Of XT And XET***

8       An issue applicable to both the rule 12(b)(1) and 12(b)(7) motions is the fact that

9    XS/Caffyn's claims are all derivative of XT's and XET's rights and assets.[4]  Whether a claim is

10   derivative depends on the state law where the company was formed.   (*Lapidus v. Hecht*, 232 F.3d

11   679, 682 (9th Cir. 2000).)   XT and XET are Delaware limited liability companies.   (FAC Exh.1

12   section 2.1, p.6; Exh.2 section 2.1, p.4.)   Delaware law instructs that whether a claim is derivative

13   depends upon (1) who suffered the alleged harm (the company or the member individually); and

14   (2) who would receive the benefit of any recovery or remedy (again the company or the member

15   individually).   (*Tooley v. Donaldson Lufkin & Jenrette, Inc.*, 845 A.2d 1031, 1033 (D.Del.

16   2004).)   A wrong to the company that depletes or destroys company assets – such as the

17   conversion or sale of company assets -- gives rise to a derivative action.   (*Kramer v. Western

18   Pacific Industries*, 546 A.2d 348, 350-351 (Del. 1988).)   To determine if a claim belongs to the

19   company, a court must consider the "nature of the wrong alleged" and "the relief, if any, which

20   could result if plaintiff were to prevail." (*Kramer v. Western Pacific Indus. Inc.*, *supra*, 546 A.2d

21   at 352.)   "An action in which the holder can prevail without showing an injury or breach of duty

22   to the corporation should be treated as a direct action that may be maintained by the holder in an

23   individual capacity."  (*Tooley, supra*, 845 A.2d at 1036.)   And, to evaluate the wrong alleged or

24   the relief sought, a court must review the body of the complaint not merely what a plaintiff may

25   assert.  (*Kramer, supra,* 546 A.2d at 352 [citations].)

26      Here, XS/Caffyn states that the causes of action it brings against Lettunich and Matan are

27

28      [4]As is set forth above, XT and XET are indispensable parties to this action whether or not
the claims are considered derivative.  (See, II.A.1 pp.4-5, *supra*.)

1  derivative.   (FAC ¶1.[5])  XS/Caffyn also states that it brings "direct" claims against Solar

2  Components, LLC ("Solar"), Cool Earth Solar Inc. ("Cool Earth"), Nathan Shulhoff, M. James

3  Bullen, Rob Lamkin, and Lawrence Asuncion for offering to and/or entering into agreements that

4  XS/Caffyn believes are disadvantageous to XET.    (FAC ¶2, see ¶¶60-89.)   Based on these

5  allegations, XS/Caffyn pleads the following causes of action:

6   •   First cause of action for conversion of money, assets, and technology from XT and
        XET.  (FAC ¶¶110-112)
7
8   •   Second cause of action for breach of fiduciary duties, for taking money, assets and
        technology from XT and XET.   (FAC ¶¶113-117.)

9   •   Third cause of action for abuse of "control and influence of the companies, for
        which [defendants] are legally responsible." (FAC ¶¶118-121.)
10
11  •   Fourth cause of action for gross mismanagement in not "prudently managing the
        assets and business of XET and XT." (FAC ¶¶122-125.)

12  •   Fifth cause of action for causing XT and XET "to waste valuable business assets."
        (FAC ¶¶126-128.)
13
14  •   Sixth cause of action for unjust enrichment "at the expense of and to the detriment
        of XET and XT." (FAC ¶¶129-131.)

15  •   Seventh cause of action for accounting.  (FAC ¶¶132-137.)

16  •   Eighth cause of action for legal malpractice by Lettunich for failing to render
        services to XT and XET within the standard of care.   (FAC ¶¶138-140.)
17
18  •   Ninth cause of action for conversion of XET's and XT's intellectual property
        seeking rescission of contracts with Solar Components and Cool Earth and a return
        of any XET or XT property transferred.  (FAC ¶¶141-142.)
19
20  •   Tenth cause of action for interference with XET's and XT's Operating Agreements
        and causing XT, Atira, and Xslent to breach their obligations under those contracts.
         (FAC ¶¶143-145.)
21
22  •   Eleventh cause of action for declaratory relief that "the property, assets or other
        rights obtained by defendants from XET were obtained wrongfully and without
        XET's or XT's authority." (FAC ¶¶146-149.)
23
24  •   Twelfth cause of action for injunction from any and all acts in furtherance of
        divesting or transferring assets of the companies or from violating the companies'

25  ───────────────

26       [5] XS's claims against Lettunich and Matan allege the defendants breached their fiduciary
    duties described as converting funds invested in XT and XET for Lettunich's own purpose (FAC
27  ¶4), divesting XS/Caffyn of management control (FAC ¶5.), and acting without authority to enter
    into licenses for the transfer of XET's technology (including licenses with Solar Components and
28  Cool Earth at issue here) (FAC ¶6-8.).

1    operating agreements.   (FAC ¶¶ 150-152.)

2    •    Thirteenth cause of action for constructive trust whereby the proceeds derived from
     the sale, option, or transfer of XT's or XET's assets be held in trust for the
3    companies' benefit. (FAC ¶¶153-157.)

4    Although XS/Caffyn characterizes the 9th through 13th causes of action to be "direct," the "nature

5    of the claims" and "relief that would result from the claims" reveal them to be derivative.

6    The 9th through 13th causes of action are premised on Solar Components' and Cool Earth's

7    (as well as their principals) negotiation and contracting for licenses and options for use of XET's

8    energy technology.   (FAC ¶¶2, 141-157.)   XS claims that these business deals are intended to

9    enrich Lettunich, Matan, and the principals of Solar Components and Cool Earth at XET's

10   expense, and intended to "convert" XET's technology.   (See, FAC ¶¶ 2,6-8, 60-89, and 9th -13th

11   causes ¶¶141-157.)   On each of these causes of action XS/Caffyn seeks a return of transferred

12   assets, a declaration holding that the assets were wrongfully obtained from XT or XET, and a

13   constructive trust over proceeds derived from the sale or transfer of XET's technology.   (*Id*.)

14   These claims seek to protect the assets of XET from what XS contends is self-dealing or

15   unfavorable terms, i.e. corporate waste.   The nature of these claims necessarily implicates an

16   injury or breach of a duty owed to the companies; XS may pursue them only derivatively not

17   "directly."   (*Tooley, supra*, 845 A.2d at 1036; see also, *Kramer, supra* 546 A.2d at 351-352.)

18   While XS/Caffyn seeks to recast these claims as a form of third party interference with a

19   member's rights, these causes of action seek redress for XT and XET for mismanagement or

20   waste.   The FAC does not state a claim that can be pursued independently of a wrong to XT or

21   XET, as is required by *Tooley*.

22   Further, XS only seeks relief belonging to XT or XET and not relief independently owing

23   to XS.   (*Tooley*, *supra,* 845 A.2d at 1038-1039.)   Specifically as to the 9th through the 13th causes

24   of action,  XS seeks to rescind the transactions with Solar Components and Cool Earth (FAC

25   ¶142, 9th cause of action); to recover damages that the "Companies" have suffered as a result of

26   the transactions with Solar Components and Cool Earth (FAC ¶145, 10th cause of action); a

27   declaration that property, assets or other rights obtained by defendants from XET as alleged [in

28   the FAC] was obtained unlawfully and that XET is entitled to return of the property or rescission

1    of contracts (FAC ¶149, 11th cause); injunction barring defendants from divesting or transferring

2    assets belonging to the companies or from violating the provisions of the companies' operating

3    agreements (FAC ¶151,12th cause); a declaratory judgment that the proceeds of the transactions

4    with Solar Components and Cool Earth and any assets acquired in connection with these

5    transactions be held in trust for the companies' benefit.   (FAC ¶155-157; 13th cause.)   As the

6    relief sought in each cause belongs to XT or XET, these claims are derivative and not direct.[6]

### III. CONCLUSION

8        Lettunich requests that this Court dismiss XS/Caffyn's FAC as it fails to establish

9    complete diversity (Fed.R.Civ. P.12 (b)(1).), and to join all indispensable parties (Fed.R.Civ.

10   P.12(b)(7).).  While leave to amend is liberally provided (Fed. R.Civ.P.15(a).), this FAC should

11   be dismissed without leave for two reasons: XS/Caffyn cannot cure the lack of complete diversity

12   and amending would be futile; and, XS/Caffyn and its attorneys have acted in bad faith, negating

13   any equitable right XS/Caffyn may have to re-plead.   (See, Motion for Sanctions; *Eminence*

14    *Capital, LLC v. Aspeon Inc.*, 316 F.3d 1048, 1051 (9th Cir. 2003) [citations].)

15       Defendants request that this action be dismissed as XS/Caffyn cannot establish complete

16   diversity exists and has identified no other basis to impose upon the jurisdiction of this Court.

17   Defendants request that this action be dismissed as XS/Caffyn has failed to name, and cannot

18   name, XT and XET as parties.  Good conscience and interests of equity warrant dismissal in light

19   of the prejudice to XT, XET, and defendants if this action is permitted to proceed without the

20   ability for complete relief to be awarded.  Dismissal is particularly appropriate where XS/Caffyn

21   has available, and has availed itself of, an able forum in the Santa Clara County Superior Court.

22

23   Dated:_____, 2008        Desouza Law Offices, PC

24                                                By:_____
                                                  Jacqueline deSouza
25                                                Attorneys for Defendants Martin Lettunich,
                                                  Stefan Matan
26

27   _____

28       [6]Similarly, on the first through eighth causes of action, XS/Caffyn seeks relief belonging
      to the companies. (See, FAC ¶¶110-140.)

1

TABLE OF CONTENTS

2

3  I. INTRODUCTION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

4  II. RELEVANT BACKGROUND . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

5  III. LEGAL ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

6  XS/Caffyn's Complaint Should Be Dismissed As The Plaintiff Lacks Complete Diversity And

7  Failed To Name Indispensable Parties . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

8       1.     Complete diversity does not exist . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

9       2.     This action should be dismissed for failing to name indispensable parties . . . . . . 6

10       3.     XS/Caffyn's claims are derivative of XT and XET . . . . . . . . . . . . . . . . . . . . . . . 9

11  III. CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1

TABLE OF AUTHORITIES

2

3   *Grupo Dataflux v. Atlas Global Group L.P.*, 541 U.S. 567 569 (2004) . . . . . . . . . . . . . . . . . . . 6

4   *Newman-Green Inc v. Alfonzo-Larrain,* 490 U.S. 826,829 (1989) . . . . . . . . . . . . . . . . . . . . . . . 6

5   *Ross v. Bernhard,* 396 U.S. 531, 538, 539 (1970) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5,7

6   *Smith v. Sperling,* 354 U.S. 91, 93, 94, 96-97 (1957) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

7   *Strawbridge v. Curtiss,* 7 U.S. 267 (1806) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

8

9   *EEOC v. Peabody Western Coal Co.*, 400 F.3d 774, 781 (9th Cir. 2005.) . . . . . . . . . . . . . . . . . 4

10  *Eminence Capital, LLC v. Aspeon Inc.*, 316 F.3d 1048, 1051 (9th Cir. 2003) . . . . . . . . . . . . . 12

11  *Faysound Ltd. v. United Coconut Chemical Inc.*, 878 F.2d 290, 294 (9th Cir. 1989*)* . . . . . . . . *6,8*

12  *Johnson v. Columbia Properties*, 437 F.3d 894, 899 (9th Cir. 2006) . . . . . . . . . . . . . . . . . . . . . . 5

13  *Lapidus v. Hecht*, 232 F.3d 679, 682 (9th Cir. 2000) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *9*

14  *Lewis et al v. Lewis et al,* 358 F.2d 495, 500-501 (9th Cir. 1966) . . . . . . . . . . . . . . . . . . . . . . . 5,7

15  *Pit River Home & Agric. Coop. Ass'n v. United States*, 30 F.3d 1088, 1099 (9th Cir. 1994) . . . 4,7

16  *Rockwell Int'l Credit Corp v. United States Aircraft Ins. Group*, 823 F.2d 302, 304

17  (9th Cir. 1987) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

18  *Summer Peck Ranch Inc v. Bureau of Reclamation*, 823 F.Supp.715, 719 (9th Cir. 1993) . . . . . . 4

19  *Thornhill Pub'n Co v. General Tel. & Elecs. Corp.*, 594 F.2d 730,733 (9th Cir.1979) . . . . . . . . 3,4

20  *Virginia Surety Co* v. *Northrop Grumman Corp*, 144 F.3d 1243, 1248-1249, (9th Cir.1998) . . . . 8

21

22  *Kramer v. Western Pacific Industries*, 546 A.2d 348, 350-351 (Del. 1988) . . . . . . . . . . . . . . . 9,11

23  *Tooley v. Donaldson Lufkin & Jenrette, Inc.*, 845 A.2d 1031, 1033 (D.Del. 2004) . . . . . . . . . 9,11

24

25  Fed.R.Civ.P.11 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1,12

26  Fed.R.Civ. P. 12(b)(1) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1,4,12

27  Fed.R.Civ.P. 12(b)(7) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4,12

28  Fed. R.Civ.P.15(a) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

1  Fed.R.Civ.P.19(a)  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  4,5

2  Fed.R.Civ.P.9(b)  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  6,7

3  Northern District Local Rule 7-8  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  1

4  Northern District Local Rule, 3-13  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  3

5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

1  JACQUELINE DESOUZA, State Bar No.: 133686
   DESOUZA LAW OFFICES, a professional corporation
2  2397 Shattuck Avenue, Suite 202
   Berkeley, CA 94704
3  Telephone: (510) 649-3420
   Facsimile: (510) 649-1711
4
   Attorneys for Defendants:
5  Martin Lettunich, Stefan Matan

6
                    IN THE UNITED STATES DISTRICT COURT
7
                    NORTHEN DISTRICT OF CALIFORNIA
8
   XS Holding B.V., derivatively on behalf of Xslent    **Case No. C08 02282 (RMW)**
9  Technologies, LLC and XET Holding Co., LLC,
   and separately on its own behalf
10                                                       **DECLARATION OF MARTIN
                                                         LETTUNICH IN SUPPORT OF
11                         Plaintiff,                    MOTION TO DISMISS THIS
                                                         ACTION FOR LACK OF
12         v.                                            DIVERSITY JURISDICTION AND
                                                         FAILURE TO NAME
13  COOL EARTH SOLAR, INC., a Delaware                   INDISPENSABLE PARTIES; and
    corporation; ROB LAMKIN, an individual;             SANCTIONS AS TO PLAINTIFF
14  LAWRENCE ASUNCION, an individual;                    AND COUNSEL
    SOLAR COMPONENTS LLC, a Delaware                     [Fed.R.Civ.P. rule 11, 12(b)(1),(7).]
15  limited liability company; NATHAN
    SCHULHOF, an individual; M. JAMES
16  BULLEN, an individual: MARTIN N.
    LETTUNICH, an individual; STEFAN MATAN,
17  an individual; and XSLENT, LLC, a Nevada            Date:
    limited liability company and ATIRA                 Time:
18  TECHNOLOGIES, LLC, a Nevada limited                 The Hon. Ronald M. Whyte
    liability company;
19
20                         Defendants.
    _____/
21
    I, Martin Lettunich declare as follows:
22
    1.      I am one of the founders of and presently am the CEO of Xslent Technologies LLC
23
            ("XT") and XET Management Holding LLC ("XET").   I make this declaration based on
24
            my personal knowledge, except as to those matters stated upon information and belief,
25
            and if called as a witness would and could so testify.
26
    2.      XT is owned 90 % by its Class A members, Atira Technologies LLC ("Atira"), and
27
            Xslent LLC ("Xslent") and 10% by its Class B member XS Holding B.V.   I am a founder
28
            and member of both Atira and Xslent.   I am a resident of California.   I am familiar with

    **DECLARATION OF MARTIN LETTUNICH IN SUPPORT OF MOTION TO DISMISS; AND FOR
    SANCTIONS – Page 1**

1    and aware of the citizenship of the members of Atira and Xslent and attest that the

2    majority of members of both companies are Californian.  I am informed and believe that

3    X.S. Holding B.V. ("XS") is owned by Brian Caffyn.

4    3.    In 2007, after entering into the XT and XET Operating Agreements that required it to

5    fund the development of Atira's alternative energy technology, Brian Caffyn attempted to

6    negotiate with me for one-sided licenses to use Atira's alternative energy technology for

7    companies that he owned or controlled.  When I refused to agree to such licenses, Mr.

8    Caffyn refused to continue to fund as required by the Operating Agreements.

9    4.    In June of 2007, the Board of Managers named me CEO of XET (I had been CEO of XT).

10    And, in response to Mr. Caffyn's failure to comply with the Operating Agreements, the

11    XT and XET Board of Managers revoked certain minority rights including XS/Caffyn's

12    right to cast two votes at XT or XET manager meetings.  XS/Caffyn objected to the

13    action by disrupting the operations of the companies by, for example,  holding competing

14    Board of Manager meetings and sending XT and XET a "litigation hold" letter.  In

15    response, XT and XET filed suit against XS in Santa Clara County Superior Court for

16    declaratory relief.

17    5.    I, along with Stefan Matan the Chief Technology/Chief Science Officer of XET, have

18    secured two separate and very lucrative business deals for XET: the Solar Components

19    LLC transaction for a license to use the XET technology with regard to some but not all

20    commercial products with a potential revenue to XET of $25 million; and the Cool Earth

21    Inc transaction for a license to use and/or 12-month option to purchase some of the XET

22    technology for use with Cool Earth's products with a potential value to XET in excess of

23    $100 million.

24    I declare under penalty of perjury under the Laws of the United States of America, that the

25    forgoing is true and correct.  Executed at Los Gatos, California on May 21, 2008.

26

27    _____/s/_____
     Martin Lettunich

28

1  JACQUELINE DESOUZA, State Bar No.: 133686
   DESOUZA LAW OFFICES, a professional corporation
2  2397 Shattuck Avenue, Suite 202
   Berkeley, CA 94704
3  Telephone: (510) 649-3420
   Facsimile: (510) 649-1711
4  jdesouza@dlawcorp.com

5  Attorneys for Defendants:
   Martin Lettunich, Stefan Matan
6

7                    IN THE UNITED STATES DISTRICT COURT

8                    NORTHEN DISTRICT OF CALIFORNIA

9  XS Holding B.V., derivatively on behalf of Xslent      **Case No. C08 02282 (RMW)**
   Technologies, LLC and XET Holding Co., LLC,
10 and separately on its own behalf

11                                                         **DECLARATION OF JACQUELINE
                                                           DESOUZA IN SUPPORT OF
                            Plaintiff,                     DEFENDANTS' MOTION TO
12                                                         DISMISS THIS ACTION FOR
        v.                                                 LACK OF DIVERSITY
13                                                         JURISDICTION AND FAILURE
   COOL EARTH SOLAR, INC., a Delaware                      TO NAME INDISPENSABLE
14 corporation; ROB LAMKIN, an individual;                 PARTIES; AND MOTION FOR
   LAWRENCE ASUNCION, an individual;                       SANCTIONS**
15 SOLAR COMPONENTS LLC, a Delaware                        **[Fed.R.Civ.P. rules 11, 12(b)(1),(7).]**
   limited liability company; NATHAN
16 SCHULHOF, an individual; M. JAMES
   BULLEN, an individual: MARTIN N.
17 LETTUNICH, an individual; STEFAN MATAN,                 Date: July 25, 2008
   an individual; and XSLENT, LLC, a Nevada               Time: 9:00 a.m.
18 limited liability company and ATIRA                     The Hon. Ronald M. Whyte
   TECHNOLOGIES, LLC, a Nevada limited
19 liability company;

20                          Defendants.
   _____/
21

22      I, Jacqueline deSouza, declare as follows:

23 1.   I am an attorney licensed to practice before the Courts of this District and of this State.  I

24      am employed with Desouza Law Offices, PC, attorneys of record for Defendants Martin

25      Lettunich and Stefan Matan.  I make this declaration based on my personal knowledge and

26      upon my role as custodian of the litigation files in this matter.  If called as a witness I

27      would and could testify to the statements set forth in this declaration.

28 2.   On April 8th, and 10th, XS Holding B.V. and Brian Caffyn ("XS/Caffyn") sought a

        temporary restraining order preventing Martin Lettunich, Xslent Technologies, LLC

("XT") and XET Holding Co, LLC ("XET") from entering into two proposed business deals one with Solar Components and the other with Cool Earth.   I appeared at hearings on both days.  Those business deals are the same ones that are the subject of claims made in this federal court action.  On or about April 11th, after submitting motion papers and arguing both applications, Paul Riehle (counsel for XS/Caffyn) withdrew the request for a restraining order as to the Solar Components transaction.   Attached hereto and incorporated herein by reference as **Exhibit A** is a true and correct copy of an email from Mr. Riehle to all parties and the Court advising that he was withdrawing the Solar Components temporary restraining order and response from the Court.

3.    The Court denied XS/Caffyn's request for a temporary restraining order as to the Cool Earth transaction and set a hearing date on Mr. Riehle's application for preliminary injunction for April 30th, when the parties were to argue an earlier application for preliminary injunction that XS/Caffyn sought.  (See, Request for Judicial Notice, Exhibit K.)   At the hearing, Mr. Riehle advised the Court that the denial of his application for a temporary restraining order had "mooted" his application for preliminary injunction and he was not seeking to enjoin the Cool Earth transaction.  Attached hereto and incorporated herein by reference as **Exhibit B** are true and correct copy of relevant pages of the reporter's transcript from the April 30th hearing.)

4.    On May 20, 2008, I received email notice that Mr. Riehle served a California Code of Civil Procedure section 170.6 peremptory challenge as to Judge Walsh.  Judge Walsh had been assigned to the state court action for all purposes by stipulation of the parties and counsel, including XS/Caffyn and Mr. Riehle in November of 2007.  Judge Walsh scheduled a conference call on May 21st , in which I participated and objected to the notice of disqualification.   Judge Walsh set Mr. Riehle's notice for hearing on June 3rd.

I declare under penalty of perjury, under the Laws of the United States, that the forgoing is true and correct.  Executed in Berkeley, California on May 22, 2008.

_____/s/_____

Jacqueline deSouza

**DECLARATION OF J. DESOUZA IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS AND MOTION FOR SANCTIONS –PAGE 2**